UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


RONALD ROBERT ROBBINS,

                    Petitioner,


vs.                               Case No.  2:05-cv-532-FtM-29SPC


WALTER A. MCNEIL,[1] Secretary of the
Department of Corrections,

                    Respondent.

_____


## OPINION AND ORDER

### I. Status

     Petitioner Ronald Robbins, an inmate of the Florida penal
system who is proceeding *pro se*, initiated this action by filing a
Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to
28 U.S.C. § 2254 on November 5, 2005.[2]  Petitioner challenges his
state court judgment of conviction finding that Petitioner violated
the terms of his community control, which was entered in the
Twentieth Judicial Circuit, Charlotte County, Florida.  Petition at

_____

     [1]Walter A. McNeil, the current Secretary of the Florida
Department of Corrections, is substituted as the proper party
Respondent for James McDonough, pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure.

     [2]The Petition was received and docketed by the Clerk of Court
on November 10, 2005.  Applying the mailbox rule, however, the
Court finds that the Petition was filed on November 5, 2005, the
date Petitioner signed the pleading.  Washington v. United States,
243 F.3d. 1299, 1301 (11th Cir. 2001).

1.   Respondent filed a Response (Doc. #10, Response) with supporting exhibits (Exhs. 1-25, Record on Appeal Vol. 1-2), including Petitioner's post-conviction motions and hearing transcripts.  Petitioner filed a Reply (Doc. #24) and exhibits (Doc. #25)(not scanned on docket).  This matter is ripe for review.

## II.  Procedural History

In 1997, Petitioner entered pleas of *nolo contendere* to the following charges: possession of cocaine, felonious possession of a firearm, possession of a short-barreled firearm, and misdemeanor possession of marijuana (case number 97-344F); first degree burglary while armed and two counts of grand theft (case number 97-407F); burglary of a dwelling and grant theft (case number 97-707F); and burglary of a dwelling while armed (case number 97-956F).  See generally Plea hearing Oct. 13, 1997; sentencing Nov. 7, 1997, Supplemental ROA Vol. I.  In 1998, Petitioner entered a plea of *nolo contendere* to the charge of first degree burglary while armed and two counts grand theft (case number 97-1178F) (all preceding cases hereinafter "Charlotte cases").  Petition at 2; Response at 2; Exhs. ROA Vol 2 at 252; Exh. 1 at 139.  In accordance with the plea terms, Petitioner was found to be a habitual felony offender, pursuant to Fla. Stat. § 775.084(1)(c), and sentenced to 20 years in prison on the first degree burglary while armed.  The sentence was suspended: Petitioner was placed on

two-years community control.  Response at 2.  The Petition does not raise any arguments concerning these convictions.

## A.  Revocation of Community Control

On September 11, 1998, Petitioner was charged with violating condition five of his community control by commission of the offense of obtaining a new controlled substance by fraud in Sarasota County (hereinafter "Sarasota case").  Exh. 1 at 168; Exh 2 at 4.  On January 20, 1999, a jury found Petitioner guilty of obtaining a controlled substance by fraud in the Sarasota case.

On March 12, 1999, Petitioner entered a plea of *nolo contendere* to the violation of community control (based on the Sarasota conviction) in his Charlotte cases.  ROA Vol. 2 at 248. The trial court accepted Petitioner's plea, revoked community control, and sentenced Petitioner as a habitual felony offender to twenty years in prison.  The sentences from the Charlotte and Sarasota cases ran concurrently.

On March 29, 1999, Petitioner, through counsel, filed a Notice of Appeal with the appellate court to review the judgment and sentence on the violation of community control.  ROA Vol. 2 at 253, 258.  On June 25, 1999, Petitioner filed an appellate brief raising one ground: the trial court improperly imposed a habitual offender sentence.  Exh. 2 at 7.  On September 3, 1999, the State filed a response brief.  Exh. 3.  On December 17, 1999, the appellate court

*per curiam* affirmed the state court's decision.  See Exh. 4;
Robbins v. State, 748 So. 2d 275 (Fla. 2d DCA 1999).

**B. Sarasota case collateral motions**

Petitioner also filed post-conviction motions in the Sarasota
case.  On December 29, 1999, the appellate court *per curiam*
affirmed the Sarasota judgment.  Exh. 5; Robbins v. State, 752 So.
2d 607 (Fla. 2d DCA 1999).  Petitioner then filed a motion to
vacate, set aside, or correct sentence in the Sarasota case.  On
July 18, 2001, the trial court granted Petitioner's motion and
entered an order vacating the Petitioner's judgment and sentence
involving the substantive offense of obtaining a controlled
substance by fraud in the Sarasota case.  Exh. 6, Exh. 15 at 262.
The trial court scheduled the case for a hearing August 8, 2001.
The State appealed the trial court's decision.  On October 25,
2002, the appellate court *per curiam* affirmed the trial court's
decision without a written decision.  Exh. 7.

**C.  Revocation case collateral motions**

On August 7, 2001, Petitioner filed a *pro se* Fla. R. Crim. P.
3.850 motion with the trial court challenging the violation of
community control hearing.  Petitioner argued: (1) the plea was
involuntary because he was led to believe that his jury conviction
in Sarasota county was all that was necessary for the violation of
community control to be entered; (2) ineffective assistance of
counsel stemming from the Sarasota case; (3) newly discovered

evidence based on the trial court's decision to vacate the judgment in the Sarasota case; and (4) there were no grounds to find him in violation of the community control because specific intent was not shown. The trial court directed the State to file a response. Exh. 9. The State filed a response to Petitioner's Rule 3.850 motion. Exh. 10. On October 15, 2001, the trial court entered an order denying Petitioner's Rule 3.850 motion. Exh. 11. In pertinent part, the trial court stated:

> In the Defendant's Rule 3.850 motion, the Defendant raises four grounds, each of which will be addressed separately.
>
> In ground one, the Defendant alleges that his plea was involuntary because he was led to believe if he was convicted by a jury in the Sarasota County case, it was simply a matter of record to prove the Sarasota County conviction, therefore, it was senseless for him to contest the violation of community control in the above referenced case.
>
> The Court finds this claim facially insufficient particularly since the Defendant does not set forth any supporting facts as to who allegedly misled him.
>
> The Court further notes that a revocation of community control, based on the certified copy of a judgment of conviction, is proper, though the conviction is subject to appeal. <u>Stevens v. State</u>, 409 So. 2d 1051 (Fla. 1982).
>
> In ground two, the Defendant claims that trial counsel was ineffective in that counsel was aware that the Defendant was not fairly tried in the Sarasota County case, that counsel should have advised him that if the Sarasota County conviction is eventually overturned or that if his actions in that case were found to be justified, then the outcome of the violation of community control hearing in the above referenced cases could be different, and that he was led to believe that the Sarasota County judgment conviction "was all that was

required and that it would definitely violate" his community control.

To prevail on a claim of ineffective assistance of trial counsel, the Defendant must demonstrate that counsel's performance was deficient and that there is a reasonable probability that the outcome of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Williamson v. Dugger, 651 So. 2d 84 (Fla. 1994).

The Court finds that the Defendant's ground two claim fails to allege any resulting prejudice.

Also, the Court again notes that a revocation of community control, based on a certified copy of a judgment of conviction, is proper, even though the conviction is subject to appeal. Stevens v. State, 409 So. 2d 1051 (Fla. 1982). Thus, even if the Defendant had not entered his plea of no contest to violating community control in the above referenced cases and gone to a violation of community control hearing, the Sarasota County judgment of conviction would have been sufficient to find a violation of community control.

In ground three, the Defendant contends that because the Sarasota County judgment and sentence has recently been vacated, the sentences in the above referenced cases should be reverted back to community control.

At the violation of community control hearing in the above referenced cases, the Defendant entered a plea of no contest, which constitutes an admission of the facts in the affidavit of community control requiring no further evidentiary hearing. (Tr. at 23); Steward v. State, 586 So. 2d 449 (Fla. 1st DCA 1991). Therefore, the fact that the Sarasota County judgment and sentence has since been vacated is irrelevant. See State v. Green, 667 So. 2d 959 (Fla. 2d DCA 1996)(a new criminal charge can result in a violation of probation even if the defendant is acquitted of the new offense); Swilley v. State, 781 So. 2d 458 (Fla. 2d DCA 2001)(the filing of a nolle prosequi on new offenses does not mean that the trial court cannot find that the defendant substantially violated his community [control] by committing the new offenses).

Additionally, the instant case is distinguishable from Plummer v. State, 365 So. 2d 1102 (Fla. 1st DCA 1979),

where the court held that the revocation of probation
based solely on the plea of no contest to the charge of
grand larceny, requires the reversal of the revocation of
probation where the grand larceny conviction itself is
reversed.

Further, the Court notes that the Defendant seemed to
admit the underlying facts of the Sarasota County case
(i.e., obtaining a controlled substance by fraud).  For
example, the Defendant stated, "I've been on this pain
medication for three years, and I just – – ran out, and
the pharmacy told me that they wouldn't refill it without
my doctor calling.  So I called and said I was the
doctor." (Tr. at 24).  The Defendant further stated, "I
know what I did was wrong." (Tr. at 24).

Lastly, in ground four, the Defendant asserts that there
is no ground for the violation of community control in
each of the above referenced cases because there was no
showing that there was "specific intent" to commit the
Sarasota County offense of obtaining a controlled
substance by fraud.

However, no evidentiary showing was required at the
violation of community control proceedings in the above
referenced cases in light of the Defendant's plea of no
contest, which constitutes an admission to the violation.
(Tr. at 23); Stewart v. State, 586 So. 2d 449 (Fla. 1st
DCA 1991).

Also, as discussed previously, the Defendant appeared to
admit the underlying facts of the Sarasota County case
(Tr. at 24).  In light of the foregoing, the Court finds
that an evidentiary hearing is not warranted on the
Defendant's 3.850 motion.

Exh. 11 (footnotes omitted).

On November 26, 2001, Petitioner filed a second Rule 3.850 in

the trial court requesting that the trial court allow him to

withdraw his *nolo contendere* plea in the violation of the community

control case.  Exh. 12.  Petitioner raised only one ground based on

"newly discovered evidence," arguing that he plead *nolo contendere*

to the violation of community control based on his conviction in the Sarasota case. Exh. 12. On December 27, 2001, the trial court entered an order <u>dismissing</u> the Rule 3.850 motion <u>with</u> <u>prejudice</u>. Exh. 13 (emphasis added). In pertinent part, the trial court stated:

> In the instant 3.850 motion for postconviction relief, the Defendant seeks to withdraw his plea of no contest to violating community control in this Court, alleging that the basis of the plea was his Sarasota County, Florida conviction. The Defendant further contends that because the Sarasota County judgment and sentence has been vacated, the basis for the plea in this Court no longer exists.
>
> However, the Defendant essentially raised this same issue in his prior 3.850 motion for postconviction relief filed in this Court on August 10, 2001, in which, among other things, he sought to have his sentence in this Court reverted back to community control with the remainder of the sentence suspended because his Sarasota County judgment and sentence had been vacated. (Attached August 10, 2001 Motion for Postconviction Relief). That issue was denied on the merits on October 16, 2001. (Attached Order Denying Defendant's 3.850 Motion for Postconviction Relief).
>
> Thus, the instant 3.850 motion for postconviction relief is successive. Fla. R. Crim. P. 3.850(f)(a second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits).

Exh. 13 (footnotes omitted).

On December 30, 2002, Petitioner filed a *pro se* "motion for post conviction relief" asking that the trial court "vacate, set aside or correct the [March 12, 1999] order violating community control and imposing the suspended sentence." Exh. 14. On February 24, 2003, the trial court entered an order denying

Petitioner's motion. Exh. 15. In pertinent part, the trial court
stated:

> The Defendant argues that his plea was involuntary
> because it was based on a "material mistake of law." In
> support, among other things, he alleges that: (a) he pled
> in the instant case based on the Sarasota County
> conviction; (b) had he known that intent was an element
> of the Sarasota County offense, he would not have pled in
> the instant case; (c) had he known that medical need was
> a valid defense to the Sarasota County offense, he would
> not have pled in the instant case; (d) he was told that
> he had no defense and that the "judgment and conviction
> and sentencing papers were the only evidence the State
> need produce to prove violation;" (e) he was led to
> believe that "even if live testimony was required, which
> he was told it was not, he would still be found guilty
> since, after all, his jury found him guilty;" (f) when he
> pled, he believed that his Sarasota County conviction was
> valid and was the only evidence needed to prove the
> violation of community control; (g) his Sarasota County
> conviction was vacated on July 18, 2001, "eviscerating
> the only evidence relied upon" for the violation of
> community control; and (h) had he known that his Sarasota
> County conviction was invalid, he would not have pled to
> the violation of community control.
>
> The two year deadline for filing a 3.850 motion expired
> on January 12, 2002. See Fla. R. Crim. P. 3.850(b);
> Cabrera v. State, 721 So. 2d 1190 (Fla. 2d DCA 1998).
>
> Because the Defendant's 3.850 motion was filed more than
> two years after the judgment and sentence became final,
> the motion is untimely.
>
> In addition, while the Defendant asserts that his claim
> is based on newly discovered evidence, he fails to allege
> that the facts on which his claim is predicated were
> previously unknown to him or to his attorney and could
> not have been ascertained by the exercise of due
> diligence as required by rule 3.850(b)(1).
>
> Moreover, to the extent that the Defendant seeks
> postconviction relief because his Sarasota County
> judgment was vacated, this claim is barred as successive
> under rule 3.850(f). The Defendant essentially raised
> this claim in ground three of his 3.850 motion filed on
> August 10, 2001, which was denied on the merits on

October 16, 2001. (Attached 3.850 motion filed on August
10, 2001 and October 16, 2001 order denying motion). In
ground three of the 3.850 motion filed on August 10,
2001, the Defendant alleged that because the Sarasota
County judgment and sentence was vacated, his sentence in
the instant case should be reverted back to community
control. In the October 16, 2001 order denying that
ground, this Court found that because the Defendant pled
no contest, which constituted an admission of the
violation of community control requiring no further
evidentiary showing, the fact that his Sarasota County
conviction was subsequently vacated was irrelevant, this
Court distinguished the Defendant's case from another
case, and this Court noted that the Defendant seemed to
admit the underlying facts of the Sarasota County offense
during the plea proceedings in this Court. The Defendant
also sought to withdraw his plea, on the basis that his
Sarasota County conviction was vacated, in his 3.850
motion filed on November 26, 2001, which was dismissed
with prejudice as successive on December 27, 2001.

Exh. 15.

On April 7, 2003, Petitioner filed a "motion for relief from
judgment" with the trial court challenging the trial court's
February 24, 2003 order denying his third Rule 3.850 motion. Exh.
16. On May 15, 2003, the trial court dismissed Petitioner's motion
without prejudice, noting that the proper course was for Petitioner
to seek redress in the appellate court. Exh. 17.

On June 26, 2003, Petitioner then filed a *pro se* Petition for
Belated Appeal in the appellate court. Exh. 18. The appellate
court granted Petitioner's Petition for Belated Appeal and directed
the State to file a Response. Exh. 19. The State filed a
Response. Exh. 23. The appellate court *per curiam* affirmed the
trial court's decision and mandate issued November 9, 2004. Exhs.
24, 25.

### III.  Applicable § 2254 Law

Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Neither party disputes the applicability of the AEDPA.

**AEDPA Time Limits**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter AEDPA). This law amended 28 U.S.C. § 2244 by adding the following new subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme

> Court, if the right has been newly
> recognized by the Supreme Court and
> made retroactively applicable to
> cases on collateral review; or
>
> (D) the date on which the factual
> predicate of the claim or claims
> presented could have been discovered
> through the exercise of due
> diligence.
>
>
> (2) The time during which a properly filed
> application for State post-conviction or other
> collateral review with respect to the
> pertinent judgment or claim is pending shall
> not be counted toward any period of limitation
> under this subsection.

28 U.S.C. § 2244(d).

Respondent seeks dismissal of the Petition as time barred due to Petitioner's failure to comply with the one-year period of limitations as set forth in § 2244(d). Respondent states "[w]ith regard to his revocation judgments, i.e., the state judgments under attack in the instant petition, Robbins' AEDPA limitations period began running on March 17, 2000, that is, the day after expiration of the time Robbins had to seek certiorari review following the December 17, 1999, affirmance in his direct appeal." Response at 7. Respondent further asserts that the limitations period did <u>not</u> commence upon the trial court's order granting the Petitioner post-conviction relief in the Sarasota case. <u>Id.</u> (emphasis added). In particular, Respondent argues that Petitioner could have exercised diligence and "inquired into whether the revocation judgments could stand sans conviction [sic] on the underlying substantive offense,

and he could have discovered whether counsel's advise in such regard was accurate." Id. at 7-8. Based on the foregoing, Respondent contends that the AEDPA limitation had expired by the time Petitioner filed his first Rule 3.850 motion dated August 7, 2001. Id. at 8.

In Reply, Petitioner states that the trial court granted his post-conviction motion on July 19, 2001, and denied the State's motion for rehearing on September 18, 2001. Reply at 9. "On August 7, 2001, just 19 days after the Sarasota conviction was reversed, Petitioner filed the first of his three post-conviction motions in the circuit court of Charlotte County challenging his *nolo contendere* plea in the revocation of his community control case as being involuntary." Id. Petitioner asserts that "[t]he absurdity in Respondent's definition of due diligence assumes that Petitioner should have, within a nine month period between March 12, 1999 (the date of the revocation hearing) and December 17, 1999 (the date of the appellate decision), recognized without the benefit of any court record the legal issues, which a trial judge, two defense attorneys, and two state attorneys did not recognize or bother to inform Petitioner about." Id. at 5-6.

The Court deems the Petition timely. As previously stated, the year time limitation runs from the latest of four specific dates. 28 U.S.C. § 2244(d)(1). This case involves the date provided by § 2244(d)(1)(A), which is "the date on which the judgment became final by conclusion of direct review or the

expiration of the time for seeking such review." Id. The United States Supreme Court has ruled that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)." Jimenez v. Quarterman, 129 S. Ct. 681, 686 (2009). Here, Petitioner filed an out-of-time appeal when he filed his "Petition for Belated Appeal" in the appellate court. Exh. 18. The appellate court granted Petitioner's belated appeal and directed the State to file a Response. Exh. 19. The State filed a Response. The appellate court entered an order *per curiam* affirming the trial court's decision on October 6, 2004, and mandate issued on November 9, 2004. Exhs. 24, 25. The AEDPA one-year time limitation began running from 90 days after the appellate court entered it's decision on October 6, 2004. This 90-day period runs from the date of entry of the judgment sought to be reviewed, not from the issuance of the mandate under local practice. Chavers v. Sec'y for Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir. 2006)(citing to Sup. Ct. R. 13.3). Thus, Petitioner had one year from January 4, 2005, to file his Petition. As such, Petitioner's federal habeas petition filed on November 5, 2005, is timely. The Court will now turn to the merits of the Petition.

**IV.**

**A. Deference to State Court Decisions**

A federal court may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

Where a petitioner's claim raises a federal question that was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson, 527 F.3d at 1146; Wright v. Sec. Dept. of Corrections, 278 F.3d 1245, 1253-54 (11th Cir. 2002).  See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law."  Wright v. Van Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially

indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. Brown, 544 U.S. at 141; Mitchell, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review de novo; rather, §

2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. Id. at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. Rice v. Collins, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed de novo. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

**B.  Evidentiary Hearing**

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

**C.  Exhaustion**

If the grounds asserted warrant review by a federal court under § 2254, petitioner must still have given the State courts the opportunity to address the federal issues.  A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ."  28 U.S.C. 2254(b)(1)(A).  This imposes a total exhaustion requirement in which all the issues must have first been presented to the state courts. Rhines v. Weber, 544 U.S. 269, 274 (2005).

AEDPA requires a state prisoner exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding, thereby giving the state the opportunity to correct its alleged violations of federal rights.  See Baldwin v.

Reese, 541 U.S. 27, 29 (2004).  The exhaustion doctrine requires that the petitioner "fairly present" his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.  Duncan v. Henry, 513 U.S. 364, 365-366 (1995)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  Petitioner must present the same claim to the state court that he argues to the federal court.  McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005); Kelley v. Sec'y Dep't of Corr., 377 F.3d 1317, 1343-1344 (11th Cir. 2004).  As to ineffective assistance of counsel claims, a petitioner must have presented each instance of alleged ineffective assistance to the state court in such a manner that a reasonable reader would understand each claim's particular legal basis and specific factual foundation. Ogle, 488 F.3d at 1368; Kelley, 377 F.3d at 1344.

A district court is ordinarily required to dismiss a "mixed" petition, i.e., one containing both unexhausted and exhausted claims.  Pliler v. Ford, 542 U.S. 225 (2004); Rose v. Lundy, 455 U.S. 509 (1982).  However, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural rule, a district court can consider the petition but treat those claims as procedurally defaulted.  Ogle v. Johnson, 488 F.3d 1364, 1370 (11th Cir. 2007).  Additionally, while under the AEDPA a federal court may not grant a habeas petition which contains unexhausted claims, it may deny such a petition.  LeCroy v. Sec'y Dep't of Corr., 421 F.3d 1237, 1261 n.26 (11th Cir. 2005).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 US. 1136 (2002). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . .." Smith, 256 F.3d at 1138.

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 537 (2006); Mize v. Hall, ___ F.3d ___, No. 07-10659, 2008 WL 2600625 (11th Cir. July 2, 2008). "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). Constitutionally ineffective assistance of counsel can constitute cause if that claim is not itself procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). To show "prejudice," petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause and

prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House, 547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson, 353 F.3d at 892. See also House, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt).

## V. Findings of Fact and Conclusions of Law

The Petition *sub judice* raises one ground of relief:

Whether Petitioner's plea was knowingly and voluntarily entered when Petitioner's plea was based upon a material mistake of fact and law contrary to the Sixth and Fourteenth Amendments to the United States Constitution.

Petition at 6. Petitioner reviews the pertinent case history as discussed above. See generally Petition at 7-8. Petitioner, in particular, states that his:

revocation hearing was held on March 12, 1999[,] in Charlotte County before the Honorable Cynthia A. Ellis. Petitioner entered a nolo contendere plea acknowledging to the court that he believed the court could show that he was found guilty of a crime while on community patrol, that he realized he did wrong, that he called the pharmacy and said he was the doctor, but that he did not forge a prescription. The court accepted the Petitioner's plea and revoked his supervision for violating condition five, i.e., the Sarasota conviction.

Id. at 8. Thereafter, Petitioner's Sarasota conviction was vacated on grounds that the element of "intent" was not established. Id. at 9. Petitioner argues that "[h]ad [he] known intent was an element in proving whether he committed the crime of obtaining a controlled substance by fraud, he would not have entered a plea, other than not guilty, at the March 12, 1999 revocation hearing." Id. Petitioner sought to withdraw his plea in light of the post-conviction relief in the Sarasota case, but the request was denied. Id. Petitioner asserts that his federal petition is based on "the same premises as those alleged in his post-conviction motion: Petitioner's plea, based solely upon the conviction in the Sarasota case . . ., which was found to be invalid, was entered upon a material mistake of law and fact." Id. at 11. Petitioner further argues that the "violation of community control, based upon such plea, is in violation of his federal constitutional rights of due process of law and to a fair adversarial hearing as guaranteed by the Sixth and Fourteenth Amendments." Id.

In Response, Respondent argues that this ground is procedurally barred. Response at 15. Respondent, in support of this argument, states that Petitioner's first Rule 3.850 did not include the ground raised *sub judice*, mistake of law or fact. Id. at 18. Further, Respondent states that Petitioner did not appeal the denial of his first Rule 3.850 motion. Id. at 18. Respondent then notes that Petitioner's third Rule 3.850, in which he raised

the same ground as the ground *sub judice*, was denied as untimely and successive. <u>Id.</u> Respondent asserts that "'[w]hen a Florida court issues a summary denial on a claim that is procedurally barred and nothing in the disposition discusses the merits of the federal claim, the Court "cannot assume that had the [state court] explained its reasoning, it would have reached the merits of [the] claim.'" <u>Id.</u> at 17 (citations omitted). Respondent further argues that Petitioner cannot establish cause, actual prejudice, or a fundamental miscarriage of justice, in order to overcome the procedural default. <u>Id.</u>

The Court agrees with the Respondent that the claim is procedurally barred based on Petitioner's failure to exhaust this ground at the state level. To the extent Petitioner argues that the plea was entered in error based on a mistake of law or fact, this ground was not raised until Petitioner filed his third post-conviction motion.[3] Exh. 15. The trial court denied the third Rule 3.850 in part as untimely, because it was not file within two-year time limitation, and the trial court found the remaining claims successive. As stated above, a petitioner must present the <u>same</u> claim to the state court that he argues to the federal court. <u>McNair</u>, 416 F.3d at 1302. To the extent Petitioner argues that his federal rights were violated because his plea was involuntarily entered, Petitioner raised this claim in his first Rule 3.850

---

[3]This the "third" motion filed after the Sarasota court vacated Petitioner's Sarasota conviction.

motion.  Exh. 8.  The trial court denied Petitioner relief on this claim on the merits.  See supra at 5-7.  However, as Respondent notes, Petitioner did not file an appeal of the trial court's denial.  According to Florida law, exhaustion of a Rule 3.850 claim, includes an appeal from the post-conviction court's denial. Leonard v. Wainwright, 601 F.2d 807 (5th Cir. 1979).

Addressing the merits of this claim, in the alternative, a federal habeas court reviews a state court guilty plea only for compliance with federal constitutional protections.  "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991)(other citations omitted).  For a guilty plea to be entered knowingly and intelligently, "'the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternative that are available.'"  Finch v. Vaughn, 67 F.3d 909, 914 (11th Cir. 1995)(citations omitted) (emphasis in original); Carter v. Gladish, Case No. 8:03-cv-1194-T-17TBM, 2005 WL 1712263 *9 (M.D. Fla. 2005)(noting a plea of nolo contendere has the same legal effect in

a criminal proceeding as a guilty plea)(emphasis added). A plea colloquy carries a strong presumption of truth. <u>United States v. Gonzalez-Mercado</u>, 808 F.2d 796, 801 (11th Cir. 1987); <u>see also</u> Exh. 11. According to Florida law, "[i]t has long been the law that a new criminal charge can result in a violation of probation even if the defendant is acquitted of the new offense." <u>State v. Green</u>, 667 So. 2d 959, 961 (Fla. 2d DCA 1996)(citing <u>Russ v. State</u>, 313 So. 2d 758 (Fla. 1975)). In this case, in addition to the alleged new Sarasota charge while Petitioner was on community control, Petitioner also entered a no contest plea to the violation of probation. During the plea colloquy, Petitioner acknowledged that he understood the plea; that he was entering the plea freely and voluntary; and additionally Petitioner stated:

> THE COURT: All right. Then, sir, is there anything else that you would like to say.
>
> THE DEFENDANT: Yeah. I'd like to say that the violation is because I was found guilty in Sarasota on another crime. It had to do with obtaining a prescription by fraud, and I realize that I did wrong up there, but the thing is, it was - - I broke my back three years ago. I've been trying to go through and get surgery for three years now. I've been on this pain medication for three years, and I just - - I ran out, and the pharmacy told me they wouldn't refill it without my doctor calling. So, I called and said I was the doctor. I mean, it's not like I forged a prescription. It's not like I robbed a pharmacy, or - - even though I know what I did was wrong, I think there's, like, extenuating circumstances. I needed the medication. And I was addicted to it, so I did what I felt I had to do. I would like you to take that into consideration. I'm pleading guilty.

Exh. 11 at 177-78. Thus, as the trial court noted, Petitioner's plea, made the fact that the Sarasota conviction and judgment had

been vacated, irrelevant. Based on the foregoing, the Court finds that the state courts' decision was not contrary to or an unreasonable application of federal law and did not involve an unreasonable determination of facts in light of the evidence.

ACCORDINGLY, it is now

**ORDERED:**

1.    Petitioner's Petition for Writ of Habeas Corpus (Doc. #1) is **DISMISSED** as procedurally defaulted, or, in the alternative, is **DENIED.**

2.    The Clerk of the Court shall terminate any pending motions, enter judgment dismissing this case with prejudice, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___24th___ day of February, 2009.


_____
JOHN E. STEELE
United States District Judge


SA: alj
Copies: All Parties of Record